UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

    Plaintiff,

    v.                            Case No. 13-CR-207

DEON HOWELL,
KANEISHA ANDERSON,

    Defendants.

---

ORDER ADOPTING IN PART RECOMMENDATION OF MAGISTRATE JUDGE
AND IDENTIFYING ISSUES FOR MOTION HEARING

The magistrate judge has recommended denial of several motions to suppress filed by Deon Howell and one motion to suppress filed by Kaneisha Anderson. Howell has objected to the recommendation as to all of the motions. Anderson did not object.

Regarding motions to suppress evidence, a magistrate judge may propose findings and make recommendations, but the final decision is this court's to make. 28 U.S.C. § 636(b)(1)(A), (B); Fed. R. Crim. P. 59(b)(1). A district court must review de novo the recommendations of the magistrate judge to which a party timely objects. 28 U.S.C. § 636(b)(1)©; Fed. R. Crim. P. 59(b)(2), (3). Portions of a recommendation to which no party objects are reviewed for clear error. *Johnson v. Zema Sys. Corp.*, 170 F.3d 734, 739 (7th Cir. 1999). Howell's objections invoke the de novo standard, and, as Anderson's motion involves the same search challenged by Howell, the court will review her motion de novo as well.

## RESULTS OF THE WARRANTLESS SEARCHES

The magistrate judge's recommendation set forth many of the facts in the record concerning the unwarranted searches of 2905 W. Wisconsin Ave., #503, which consisted

of an initial entry by police officers and a subsequent protective sweep. She recommended denial of Howell's motions to suppress the results of the searches based on a lack of standing.

Fourth Amendment rights are personal, enforceable only by one whose protection was infringed by the search or seizure. *Rakas v. Illinois*, 439 U.S. 128, 138 (1978). The challenged conduct must invade the defendant's legitimate expectation of privacy rather than that of a third party. *United States v. Payner*, 447 U.S. 727, 731 (1980). The party moving to suppress has the burden of establishing that his own Fourth Amendment rights were violated by the challenged search. *Rakas*, 439 U.S. at 131 n.1. Thus, Howell bears the task of establishing that he had a personal expectation of privacy while in the apartment.[1]

The magistrate judge believed Howell had presented no evidence on the matter and that the government's evidence, in particular Howell's statements claiming a different address and the fact that the building manager's lack of any record that Howell lived in the apartment, showed the contrary. However, Howell argues that his statements regarding his residence occurred after the search and during interrogations when he was trying to deny his and Anderson's connection to the drugs and other items that were found in the apartment. Howell also points to instances when law enforcement and the government have referred to the apartment as Howell's residence, such as in the affidavit used to obtain the search warrant, in the criminal complaint, and in the government's argument that

---

[1] Howell contends that because his statements of denial regarding his living at the apartment occurred after the apartment was searched, they were a form of abandonment, meaning that the government assumes the burden of proof regarding standing. However, the court is not persuaded that the burden should shift to the government. If nothing in the record establishes in the first place that Howell had an expectation of privacy in the apartment, then there was nothing for him to abandon. Under *Rakas*, Howell must first establish with facts in the record that he has a personal Fourth Amendment right to protect.

2

police could validly enter Howell's residence to arrest him. According to Howell, the criminal complaint alleged that the apartment contained photographs of Howell and Anderson as well as mail addressed to him. (*See* Doc. 48 Ex. 1 at 3.)

At this stage, allegations in the criminal complaint are not facts in the record on which this court can rely to find in Howell's favor. Moreover, the court cannot fault the magistrate judge for referencing Howell's statements denying residence in the apartment, even if made post-search, when there is little to nothing pointing the opposite way with which Howell could meet his burden. At the evidentiary hearing Howell did not elicit testimony from police officers as to what items in the apartment suggested Howell lived there, and neither Howell nor Anderson testified as to any such facts.

Earlier, the court gave defendants a chance to supplement their briefing specifically as to facts supporting Howell's standing. (*See* Doc. 52.) Howell pointed to three facts: (1) Officer Ozelie was given the apartment #503 address at which to find Howell on the supervision warrant, suggesting more than a brief or casual connection to the apartment; (2) officers heard a man and woman conversing in the apartment with the door closed, suggesting a desire for privacy; and (3) a credit card with Howell's name was on a ledge in a bedroom displayed in the Exhibit 9 photo. (Doc. 52 at 3, 5-7.)

But the court finds these facts insufficient to establish standing; they do nothing to indicate that Howell was anything other than the briefest of visitors—perhaps stopping in the apartment merely to pick up his daughter from her mother. At the last hearing in this case, counsel for Anderson pointed to a list of chores in the Exhibit 2 photo, which allegedly shows Howell's name assigned to tasks. But the court's copy of the photo does

not show the names assigned to the tasks. At most, the court sees a "D" assigned to garbage.

Rather than deny Howell's motions to suppress based on lack of standing, the court will conduct a motion hearing to provide Howell another opportunity to highlight the evidence in the record that supports a finding that he had an expectation of privacy in the apartment that was searched or to present additional evidence for the record. Howell's supplemental brief suggests that he may wish to testify regarding his connection to the apartment, and he asks for a hearing to submit that additional evidence. (*See* Doc. 52 at 9.) And if Howell has a more complete photo showing the chore list and his name, he can present that at the hearing.

In addition to addressing the issue of standing at the motions hearing, the court would like the government to explain apparent inconsistencies in its position concerning Howell's relationship to the searched premises and whether Howell may have an expectation of privacy there even if it was not his residence. Prosecuting authorities have had changing positions on Howell's relationship to the premises. For instance, the search warrant, presumably prepared for Milwaukee County Circuit Court Judge Jeffrey Wagner by law enforcement officials, stated that the apartment was "occupied by Deon B. Howell . . . and Kaneisha L. Anderson." (Doc. 14 Ex. 1 at 1.) In its brief to the magistrate judge the United States argued that "the affidavit accompanying the search warrant establishes probable cause to believe *that Howell's residence* contained evidence of drug trafficking." (Doc. 42 at 10 (emphasis added).) And the United States recently filed a bill of particulars seeking forfeiture of a television "seized from defendant Deon Howell's apartment." (Doc. 54.) Does the government mean apartment #503 or some other apartment? Further, the

4

government has not challenged Anderson's standing. (*See* Doc. 42 at 5 n.2.) If Howell is Anderson's fiancé or the father of her child and stays in the apartment from time to time, how does he differ from a house guest or hotel guest, who could have expectations of privacy in the unit? *See Minnesota v. Olson*, 495 U.S. 91 (1990).

Further, the court would like additional argument concerning whether, assuming Howell has standing, the officers were entitled to enter the apartment to arrest him, as they possessed an unchallenged warrant for his arrest. Generally, law enforcement is entitled to enter a person's residence to execute an arrest warrant against that person. *See Maryland v. Buie*, 494 U.S. 325, 330, 332-33 (1990); *Payton v. New York*, 445 U.S. 573, 603 (1980) ("Thus, for Fourth Amendment purposes, an arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within."); *United States v. Pelletier*, 469 F.3d 194, 200-01 (1st Cir. 2006) (finding that officers executing a parole violation warrant could enter the parolee's hotel room to arrest him).

The court believes there was probable cause for a search if a scale with possible heroin residue was viewed by Officer Ozelie during the course of Howell's arrest and Ozelie's observation is considered together with Officer Robakowski's testimony that he detected the scent of burned marijuana and observed marijuana in plain view (personal use amount or not, marijuana is illegal). Nothing in the record draws into question the testimony of Officer Ozelie, who is 6' 8" tall and could see the scale on top of the kitchen cupboard with brown residue believed to be heroin along with razor blades. But Ozelie saw the scale only after entering the apartment a few feet to handcuff Howell. That being so, the court is mindful that for an item to be considered in the plain view of a police officer, the

5

officer has to legally be in the spot from which he viewed the item. *See Horton v. California*, 496 U.S. 128, 136-37 (1990); *Arizona v. Hicks*, 480 U.S. 321, 326 (1987); *United States v. Bruce*, 109 F.3d 323, 328 (7th Cir. 1997).

The magistrate judge stated her belief (when addressing Anderson's motion) that the officers' entry a few feet into the apartment to handcuff Howell was reasonable given Howell's absconder status and the limited space in the hallway outside the apartment. However, the court notes that Howell willingly submitted to the officers (*see* Doc. 51 at 29 (Ozelie stating that Howell was calm, "had his hands up a little bit and submissive and ready to turn himself in," and "didn't look like he was going to put up a fight")) and there were four officers to handle any resistance, making it unlikely that Howell posed an escape threat. Consequently, this court must consider whether entry over the threshold rather than waiting for Howell to cross over to the hallway was reasonable. However, if entry over the threshold with an arrest warrant was permitted under the Fourth Amendment, then Officer Ozelie's presence just over the threshold was lawful.[2]

Howell's standing could be a moot issue for him: either he had no standing and cannot challenge the searches, or he had standing that allowed officers to enter the apartment to arrest him on the warrant, at which point they saw the scale and possible heroin residue in plain view. However, Howell can discuss the application of *Buie* and *Payton* at the upcoming hearing. And the outcome on standing may affect Anderson's motion, so she may wish to address the point further as well.

---

[2]The court is unpersuaded by defendants' arguments that the police officers violated their agreement not to enter the apartment if Anderson brought Howell to the door. If *Buie* and *Payton* allowed the officers to enter, then no Fourth Amendment violation occurred regardless of whether they breached an oral promise.

6

Also, the court would like to hear additional argument regarding whether Officer Adam Robakowski's viewing of a small amount of marijuana and his sniff of the odor of smoked marijuana, needing nothing further, constituted probable cause to search the apartment. Probable cause exists when the known facts and circumstances warrant a person of reasonable prudence to believe that contraband or evidence of a crime will be found. *United States v. Brack*, 188 F.3d 748, 755 (7th Cir. 1999). There appears to be no dispute that Anderson left the apartment door open while she went to get Howell and that the officers were in the public hallway at that time. If the scent and sight of marijuana was enough to constitute probable cause, then consideration of the scale is unnecessary. The officers would have had probable cause to seize the marijuana and all other items of evidence obtained from the apartment would have been inevitably discovered. The court does not believe defendants addressed this point sufficiently and will give them an opportunity at the motions hearing to supplement their written submissions with oral argument.

## ISSUES WITH THE WARRANTED SEARCHES

Howell contends that the warrant obtained by the officers after he was taken into custody violated Fed. R. Crim. P. 4.1 and Wis. Stat. § 968.12 because Officer Robakowski applied for a warrant by fax and Milwaukee County Circuit Court Judge Jeffrey Wagner did not place Robakowski under oath over the phone before signing the warrant. (*See* Doc. 14.) In addition, Howell contends that Officer Robakowski's affidavit was deficient and contained false information (*see* Doc. 15) and that the warrant did not mention the safe that was searched, making the search of its contents illegal.

The magistrate judge did not address these arguments in her recommendation, likely because her thoughts on Howell's lack of standing applied to the warranted search issues as well.

Rule 4.1 applies to warrants presented to and considered by a federal magistrate judge. Howell provides no authority for applying the rule to warrants issued by state-court judges upon the application of state or municipal law enforcement officers. Wisconsin Statute § 968.12 provides for search warrants under state law and indicates they can be upon affidavit or oral testimony. § 968.112(2), (3). The Wisconsin rule does not state that affidavits that are faxed must be sworn orally, and Howell fails to provide authority on the state courts' practices in the use of faxes in issuing warrants. Regardless, violation of the state rule on issuance of warrants does not impact whether the warrant comports with the Fourth Amendment. *See United States v. Cazares-Olivas*, 515 F.3d 726, 730 (7th Cir. 2008) (finding that violation of the precursor to Rule 4.1 did not call for suppression of the results of the search and stating that "violations of federal rules do not justify the exclusion of evidence that has been seized on the basis of probable cause, and with advance judicial approval"); *United States v. Taylor*, No. 10-CR-16, 2010 WL 2425922, at *3 (E.D. Wis. June 11, 2010) (stating that violation of Wisconsin law was immaterial regarding a motion to suppress in federal court; "the issue is whether the warrant satisfied the Fourth Amendment").

Moreover, Howell has presented nothing indicating any bad faith by Officer Robakowski in obtaining the warrant. Thus, the good faith exception of *United States v. Leon*, 468 U.S. 897 (1984), applies. In *Leon*, the Supreme Court held that a search is valid if executed by an officer who reasonably and in good faith believes there was probable

cause to issue the warrant. *Id.* at 918-23. Suppression of the results of a warranted search is appropriate only if the officers were dishonest or reckless in preparing their affidavit or could not have harbored an objectively reasonable belief in the existence of probable case. *United States v. Sleet*, 54 F.3d 303, 307 (7th Cir. 1995). Here, there is no suggestion that the judge abandoned his neutral role. Even though Robakowski's search warrant affidavit and hearing testimony that he observed what he believed to be heroin, are inconsistent with Exhibits 1, 2, 4 and 5, allegedly depicting the clear plastic bag of suspected heroin, the court is not persuaded that the officer was dishonest or reckless in preparing his affidavit. Further, Robakowski presented the affidavit and form search warrant to an assistant district attorney for review and approval before sending it to the duty judge. Moreover, Robakowski's affidavit and the form of the search warrant suggest that the searching officers could reasonably have believed there was probable cause to conduct a search. Thus, officers executing the search warrant were permitted to rely upon it. Consequently, Howell's motion to suppress evidence based on a violation of warrant rules will be denied.

Howell contends that Officer Robakowski's affidavit did not contain sufficient information on which Judge Wagner could base the warrant. For instance, Howell submits that Robakowski failed to set forth in his affidavit that he had sufficient training to recognize the odor of burned marijuana. Further, Howell argues that Officer Robakowski's claim that he could smell burned marijuana should be removed from the affidavit for purposes of assessing it because the statement was false. Howell bases his contention on the absence of any police report discussing an odor of marijuana at the entrance to the apartment. However, Officer Robakowski testified before the magistrate judge about

9

smelling burned marijuana, and Howell presented no evidence to the contrary. Thus, the court finds that the statement in the affidavit underlying the search warrant was not false and that Officer Robakowski did smell burned marijuana. Further, Officer Robakowski testified that he saw marijuana on the kitchen counter while he was standing in the hallway, and Howell has not persuaded the court that such testimony is not credible. If these facts are sufficient for finding probable cause to search (to be further argued as discussed above), then the affidavit was sufficient. Notably, the affidavit added two interesting points: when Robakowski went to secure the marijuana in the apartment he saw a plastic bag containing an off-white substance he suspected was heroin and when he did a protective sweep he saw a safe. At the evidentiary hearing Robakowski indicated that he did not see the bag of suspected heroin on top of the cupboard until after the scale had been spotted, so whether these facts were properly considered by Judge Wagner depends on whether Robakowski was legally in the apartment at that time. Nevertheless, assuming for argument's sake that the sight and smell of marijuana alone failed to establish probable cause, officers executing the warrant were entitled to rely on the warrant under the *Leon* good-faith exception. Therefore, Howell's motion to quash the search warrant and suppress evidence found in the resultant search will be denied.

As for Howell's argument that the search warrant did not mention a search of the safe found in a closet, the court finds that the warrant permitted a search of the "entire house and all storage areas accessible to 2905 W. Wisconsin Ave. #503 . . . and all persons present on premises, certain goods, chattels and property." (Doc. 14 Ex. 1 at 1.) Objects of the search included heroin, marijuana, drug-related money and records, and weapons, any of which could be stored in a safe. Even if the safe could be considered

10

outside of the "storage area" language in the search warrant, the inevitable discovery doctrine applies, as officers would in all likelihood have sought and received a second warrant authorizing a search of the safe and seizure of its contents.

The court is mindful of Howell's skepticism about the timing of the search of the safe: he says that because the warrant was faxed back to Officer Robakowski by the judge at about 6:29 p.m. and Howell was questioned about the safe at about 7:00 p.m., the officers could not have waited for the warrant before searching the safe. However, review of the recording of Howell's first interview indicates that Officer Patrick Fuhrman did not question Howell about the safe until approximately 7:19 p.m., after Furhman went to the door of the interview room to obtain a slip of paper. Therefore, the officers had more time to conduct an authorized search than suggested by Howell. No other facts in the record support a finding that the officers failed to wait until the warrant issued to open the safe.

## HOWELL'S TWO STATEMENTS

Howell was interviewed by Officer Fuhrman the evening after his arrest and the next morning by officers. He contends that the officers interviewing him failed to read him his *Miranda*[3] rights, that the officers who conducted the second interview failed to honor the invocation of his right to remain silent and his right to counsel and that the government failed to provide recordings of two interviews. (*See* Docs. 18, 19.) These arguments fail.

The record indicates that prior to the evidentiary hearing, the government gave defense counsel an audio recording of the second interview. Howell's attorney believed that the recording was incomplete because he had only twenty-one minutes of it. The

---

[3] *See Miranda v. Arizona*, 384 U.S. 436 (1966).

11

government submitted the complete recording as Exhibit 11 at the hearing, and the court's review of that exhibit indicates that it is about twenty-one minutes long and contains the full interview. There is nothing else in the record that suggests that the government has failed to provide Howell or his attorney with the full recording of his interview.

During the evidentiary hearing the government also provided defense counsel with an audio-visual recording of the first interview and submitted the recording as Exhibit 10. Defense counsel had an opportunity to review the recordings of both interviews before the magistrate judge's recommendation to this court. Thus, the defense has not been deprived of any of Howell's custodial statements.

The court has reviewed both recordings. As indicated by the magistrate judge, they establish that Howell was given *Miranda* warnings at or shortly after the start of each interview, before any questioning on matters other than his address or routine booking information. Further, the recording of the first interview reveals that Howell did not invoke his right to an attorney.

As for Howell's charge that by interviewing him the second time, less than a day after the first interview, officers violated his right to remain silent (*see* Doc. 19), the recording of the first interview establishes that Howell never expressly or unambiguously invoked his right to remain silent or his Fifth-Amendment rights. Instead, he stated only that he "was ready to go" or that he wanted to go back to his cell or "to the county." Invocation of the right to remain silent must be made unambiguously to cause police to end an interrogation. *Berghuis v. Thompkins*, 560 U.S. 370, 380-82 (2010). Moreover, the recording shows that Howell made this statement several times but then kept talking freely with Officer Fuhrman. Even after the last statement that he wanted to go back to his cell

or to the county, which occurred after Furhman said he did not believe Howell, Howell kept talking about his address on Sherman and how apartment #503 was not his residence. This court agrees with the magistrate judge that no evidence indicates that Howell was coerced into continuing to talk or that Howell was not allowed to end the interrogation. He voluntarily kept talking. Further, this court concurs with the magistrate judge's finding that in the first interrogation Howell waived his right to remain silent and did not withdraw that waiver. At the end of the first interrogation, he wanted to return to his cell, but he did not say he was unwilling to talk later or that he was withdrawing his waiver.

The morning after the first interview, Howell was interviewed by three officers. One, apparently, knew Howell had been questioned the evening before. But even if Howell's demand to return to his cell is interpreted as invocation of his right to remain silent, the second set of officers read him his *Miranda* rights again, Howell said he waived those rights, and he talked without audible hesitation or mention of a desire to remain silent. Consequently, the court finds no coercive questioning or tactics by the officers to get Howell to talk during the second interview.

In *Michigan v. Mosley*, 423 U.S. 96, 105-06 (1975), the Supreme Court found that when the police immediately ceased the first interrogation, resumed questioning only after the passage of a "significant period of time" (a few hours in that case), and gave a fresh set of *Miranda* warnings, no violation of the right to remain silent occurred. Following *Mosley*, the Seventh Circuit set forth the following nonexclusive factors to consider as part of a "totality of the circumstances" test regarding whether a defendant's invocation of the right to remain silent was honored: the amount of time that lapsed between interrogations, the scope of the second interrogation, whether new *Miranda* warnings were given, and the

13

degree to which police officers pursued further interrogation. *United States v. Montgomery*, 555 F.3d 623, 633 (7th Cir. 2009); *Easley v. Frey*, 433 F.3d 969, 972-73 (7th Cir. 2006). Although *Mosley's* facts included that the two interrogations involved questions regarding separate crimes, the Seventh Circuit has rejected the view that the interrogations must concern unrelated crimes. *Montgomery*, 555 F.3d at 634. The test is not subject matter but instead whether the police sought to undermine the suspect's resolve to remain silent. *Id.* at 633. Here, though Howell's interrogations concerned the same crimes, a substantial amount of time passed between interviews (the interrogations even occurred at different locations by different sets of interrogators), *Miranda* warnings were given both times, and the interrogators did not pressure Howell into talking during the second interview. As in *Mosley*, this is not a case where the police failed to honor the interogatee's right to cut off questioning or persisted in repeated efforts to wear him down.

Therefore, two of Howell's motions to suppress the statements will be denied. (The motion to suppress the statements based on "the fruit of the poisonous tree" doctrine remains pending, as it relates to the issues to be covered at the upcoming motions hearing.)

CONCLUSION

IT IS ORDERED that Howell's motion to suppress evidence based on a failure of the warrant's issuance complying with procedural rules (Doc. 14) is denied.

IT IS ORDERED that Howell's motion to quash search warrant because of a deficient affidavit or falsity in the affidavit (Doc. 15) is denied.

IT IS FURTHER ORDERED that Howell's motions to suppress his statements (Docs. 18, 19) are denied.

Remaining for decision are Howell's motions to suppress evidence from the warrantless search (Doc. 17) and his statements as fruit of the poisonous tree (Doc. 16), plus Anderson's motion to suppress (Doc. 27).

Dated at Milwaukee, Wisconsin, this 12th day of November, 2014.

BY THE COURT

/s/ C.N. Clevert, Jr.
C.N. CLEVERT, JR.
U.S. DISTRICT JUDGE